# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONG YI and EDGAR MARTINEZ ) | |
| ) | |
| Plaintiffs, ) | No. 04 C 3138 |
| ) | Paul E. Plunkett, Senior Judge |
| v. ) | |
| ) | |
| STERLING COLLISION CENTERS, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Dong Yi and Edgar Martinez ("Plaintiffs"), on behalf of a class of body shop technicians, have filed a lawsuit against Sterling Collision Centers ("Defendant"), alleging violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. §§ 201 *et seq*. Plaintiffs are auto body technicians once employed by Defendant at its Rolling Meadows facility. (Joint Stmt. of Facts ¶¶ 1-3.) Defendant is a wholly-owned subsidiary of Allstate Non-Insurance Holdings, Inc. ("Allstate") and owns several body shops nationwide, employing over 800 individuals. (*Id.* ¶ 8.) Although the majority of Sterling's revenue is derived from repairs performed for Allstate policy holders, Sterling's stores are open to other members of the public. (*Id.* ¶¶ 9,13.) Sterling is not a wholesaler of goods and services, nor does it resell services or parts that it uses during the repair process. (*Id.* ¶ 14.)

The source of this controversy lies in the rather elaborate compensation plan devised by Sterling for its auto repair technicians. The Plaintiffs contend that these technicians are in essence hourly workers who, despite their significant overtime, are not paid time and a half for their extra

work. Sterling considers its technicians to be on a "commission" basis and thus exempt from FLSA's overtime mandate. Since it is undisputed that the Plaintiffs do not receive time and a half for hours worked in excess of forty, we must decide whether Sterling can demonstrate that it is entitled to FLSA's exemption for commissioned employees.

The material facts are essentially undisputed and both sides seek summary judgment. Although the question is not without difficulty, we conclude that Defendant Sterling's motion for summary judgment should be and is hereby granted.

## Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). In addition, to defeat a motion for summary judgment, "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient . . . ." *Anderson*, 477 U.S. at 252.

## Discussion

Plaintiffs allege that Sterling's team pay system violates the FLSA because it does not compensate technicians at a higher rate for hours worked in excess of forty each week. Defendant

argues that its technicians fall within the FLSA's exemption; hence, its employees are not entitled to overtime pay at a higher rate. The FLSA states that employers must pay employees an overtime rate that is at least one and one-half times their regular rate of pay when the employees work over forty hours in one work-week. 29 U.S.C.S. § 207(a)(1). The exception lies in 29 U.S.C. § 207(i) which provides:

> No employer shall be deemed to have violated [the overtime provisions of the Act] by employing any employee of a retail or service establishment for a workweek in excess of [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one half times the minimum [wage], and (2) more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).

It is Defendant's burden to prove each element of the 7(i) exemption, an exemption that is to be narrowly construed. *Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 990 F.2d 279, 282-83 (7th Cir. 1993). Thus, to prevail, Sterling must establish that, based on the law and evidence examined in the light most favorable to Plaintiffs: (1) it is a retail or service establishment; (2) its employees' regular rate of pay is more than 1.5 that of the federal minimum wage; and (3) more than half of its employees' compensation comes from commissions, and a reasonable jury could not conclude otherwise. As to the first prong, under the FLSA, a retail or service establishment is one: (a) that sells goods or services; (b) where 75 percent of such sales is recognized as retail in that industry; and (c) that does not resell over 25 percent of its goods. 29 U.S.C. § 213 (a)(2); 29 C.F.R. § 779.24 (2004).

Defendant claims that its stores are retail establishments because they sell the service of repairing automobiles directly to the consumer who is in "the end of the distribution stream"; the

stores are located in commercial business settings and are available to the general public; repairs make up over 75 percent of the stores' sales; and they do not resell more than 25 percent of their services or goods. Plaintiffs make the rather ingenious argument that because Defendant is owned by a subsidiary of the Allstate Insurance Corporation, Sterling is not part of the automobile repair industry, but it is actually in the insurance business. We disagree. While Sterling is clearly a subsidiary of Allstate non-insurance holdings, it is also clear by the nature of its business that Sterling is indeed in the automobile repair industry. Further, its stores are not for the exclusive use of Allstate's insured; through advertisement and marketing, the general public is invited to become patrons and, in fact, constitutes a meaningful portion of Sterling's repair business. (Jt. Stmt. Mat. Facts ¶¶ 8,9,11,13.) Moreover, the Code of Federal Regulations ("CFR") specifically names automobile repair shops as among those establishments traditionally considered as retail establishments. *See* 29 C.F.R. § 779.320. By its terms, the exemption clearly applies to businesses servicing automobiles. We believe Defendant has sufficiently established that it is a retail establishment.

Next, Defendant must show that its employees' regular rate of pay is more than 1.5 that of the federal minimum wage. There is no dispute that Plaintiffs' salary exceeds the federal minimum wage. Yi's regular hourly rate was $21.50/ hour, Martinez's hourly rate was $17.50/ hour, and as stipulated by the parties, all of the prospective plaintiffs receive well in excess of one and one-half times the federal minimum wage of $5.15 per hour for all hours that they worked, including all overtime hours. (Joint Stmt. of Facts ¶¶ 2,3,6.)

The central issue in this dispute is thus the nature of the Sterling pay plan for its technicians – the individuals who actually do the repair work on the damaged vehicles. Plaintiffs contend the

essence of the plan is an hourly pay scale, and thus under FLSA, Sterling is required to pay time and one-half for all work in excess of forty hours a week. 29 U.S.C. § 207(a)(1). Not so, responds Sterling, which claims its payment plan falls under the so-called commission work exception (29 U.S.C. § 207(i), which excuses the obligation to pay overtime for those paid by commissions. The FLSA's 7(i) exemption provides in part:

> [A]ll earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207 (i).

Thus, we must analyze the Sterling compensation scheme to see if it qualifies for the commission exception to the overtime requirement. In doing so, we are cognizant that Sterling as the employer has the burden of proving the applicability of the FLSA exception by "clear and affirmative evidence." *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992).

## *Compensation at Sterling*

The problem before us is not simple. It is difficult because not only is the statutory term "commission" an elusive one, but also because the Sterling pay plan cannot easily be categorized as either result-oriented or hourly based. In fact, it is a little of both. The Sterling plan begins with a concept known as "flag hours." Flag hours are the number of hours estimated to be needed to perform individual repair tasks on a damaged vehicle. These hours are determined by an estimator using a computer program developed from industry-wide figures which averages repair times for each task. As we understand it, each job is estimated to take a certain number of hours based on the average number of hours consumed by repair personnel in the entire industry to perform that job.

Thus, if a repair technician were "average," his actual hours of labor would approximate the flag hours for the job. But the Sterling incentive pay plan rests in the assumption that its technicians can, because of their skill, experience, and desire to maximize their income, finish repair tasks in less time than the industry average. Thus, on a repair job estimated to take some twenty hours, the Sterling technicians might be able to complete it in ten. When a task is finished, the technicians simply check the task as completed, without recording their actual number of hours needed to perform the work.

That is not to say, however, that the technicians do not keep track of their time. They do – each clocks in and out at the beginning and end of each shift as well as for lunch or other breaks through the day. As we will see, the hours worked by each technician play a role in determining his compensation. Each technician has an individual hourly rate negotiated with Sterling that varies, based on his skill and ability. All these individual rates are substantially greater than one and one-half times the federal minimum wage – most are at least double that wage. Sterling technicians do regularly work overtime, but rarely exceed ten overtime hours a week.

The second part of the Sterling pay plan incorporates a team concept. Repairs to damaged vehicles require specialists in metal work, fitting, painting and detailing, just to name a few. Sterling shops create a team of technicians who among them possess all the necessary skills to complete repairs to any damaged vehicle. The technicians therefore work on each job as a team. The team is not paid per individual job, but on all the work completed during a week. Only then are the total number of completed flag hours calculated for the team for the entire week's work. Next, the team's total actual hours worked to complete the flag hours are determined. These are almost always less than the flag hours. Each technician's contribution to the team's actual work hours (represented by

a percentage) is multiplied by the flag hours and then multiplied again by the individual technician's rate of pay. Thus, for example, assume a team of three technicians completed 180 flag hours for the week – to do so, A worked 50 hours; B, 40 hours; and C, 30 hours, totaling 120 actual hours to finish the 180 flag hours job. A is therefore entitled to 5/12; B to 1/3; and C to 1/4 of the flag hours or 75 hours, 60 hours and 45 hours, respectively. Those hours are multiplied by A, B and C's individual pay rate to calculate each's pay for the week. So A, who actually worked 50 hours, will be paid as though he worked 75.

As stated earlier, almost all repair work is performed in less than the estimated flag hours, and thus most weeks the technicians are compensated at more than their hourly rate. Since their negotiated individual hourly rates are already well in excess of minimum wage, the technicians are well compensated for their work. For example, Plaintiffs earned between $60,000 and $70,000 over the years preceding their terminations.

Sterling's avowed purpose in utilizing this scheme is to improve work flow, allow technicians to specialize, and promote teamwork. To a large extent, the scheme seems to do that.[1] But whether it is a commission or a flat rate is not so clear. It is as though both are wicked stepsisters and the slipper does not fit either. Judge Posner recognized as much in *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173 (7th Cir. 1987) when, in deciding a pay plan for banquet workers based on a sixteen percent gratuity added to the bill, he noted "the meaning of the word

---

[1] The plan is able to provide "a commission," but is really incentive pay to Sterling technicians because the customer whose car is repaired pays for hours not actually worked. Apparently Sterling feels this is fair since the customer has been the beneficiary of work by highly skilled and motivated technicians We are not so sure.

'commission' in section 207(i) is not clear just from reading the provision." Even more so here where the Sterling pay plan utilizes both rewards for results as well as flat hourly rates.

The plan here creates a pool of earnings that will increase each week based entirely on how efficiently the team members are able to perform the repairs. This is essentially the way commissions work – compensation keyed to results. At the same time, the hours each technician works and his individual pay scale determines his share of the team's pool. To help solve the dilemma, we will look to the Wage and Hour Handbook as well as to the opinion letter of the Department of Labor, the presumed experts in the field. The Wage and Hour Division of the Department of Labor's Field Operations Handbook states in part:

> Some auto service garages and car dealerships compensate mechanics and painters on the following basis: The painter or mechanic gets so much a "flat rate" hour for the work he or she performs. A "flat rate" hour is not an actual clock hour. The painter or mechanic may work only 7, 8 or 9 hours a day and still receive credit for 10, 11 or 12, etc., flat rate hours depending upon how much work he or she has done. Each job is assigned a certain number of hours for which the customer is charged, regardless of the actual time it takes to perform the job. The employee is given a certain proportion of that charge expressed in terms of so many dollars and cents per "flat rate" hour rather than in terms of a percentage of the charge to the customer. The dealer does not change the employee's share per flat rate hour if the charge to the customer is changed. In such situations Wage-Hour will not deny that such payments represent "commissions on goods or services" for purposes of Sec. 7(i) (*see* IB 778.117 and 779.413(b)). Such employment will qualify for exemption under Sec. 7(i) provided all the other tests of the exemption are met.

Field Operations Handbook, Section 21h04(d).

In addition, the Department of Labor has suggested that "the whole premise behind earning a commission is that the amount of sales would increase the rate of pay. Thus, employees may elect to work more hours so they can increase their sales and, in turn, their earnings. When a commission plan never affects the rate of pay, the purpose behind using a commission rate also fails." Opinion

Letter of Wage and Hour Division, U.S. Dept. of Labor, November 14, 2005, 2005 WL 3308624 (2005) (citing *Erichs v. Venator Group, Inc.*, 128 F. Supp. 2d 1255, 1260 (N.D. Cal. 2001); *Herman v. Suwanee Swiftly Stores, Inc.*, 19 F. Supp. 2d 1365, 1371 (M.D. Ga. 1998)). It is noted that all of the compensation plans found in 29 C.F.R. 779.413(a) "except for the 'straight salary or hourly rate' may qualify as 'bona fide commission' plans under § 207(i)." *Id.* (citing *Viciedo v. New Horizons Computer Learning Ctr., Ltd.*, 246 F. Supp. 2d 886, 896 (S.D. Ohio 2003)). Straight salary and hourly payments do not qualify as commissions.

Although neither source carries the force of law, *Kirkland Masonry, Inc. v. C.I.R.*, 614 F.2d 532 (5th Cir. 1980), the concepts are helpful. The agency seems to construe commissions as payment for sales or work, which because of its quality, not quantity, results in greater profitability for the employer and greater remuneration for the employee. In other words, the employee is paid for results. Actual hours worked, of necessity, play a part in the results achieved, but the results are key to determining the employee's earnings. We believe that this is the essence of the Sterling plan. Each technician shares in a pool of money created by his team's effort, which exceeds the number of hours he actually worked. The fact that each share is determined by individual pay scales and actual hours worked does not detract from the fact that it was the entire team's effort that created that pool.

Our tentative conclusion finds support in Judge Posner's enlightening analysis of the scope and purpose of the overtime provision of FLSA, which he finds is the best method to understand the concept of commission. In the absence of concrete definitions of what a bona fide commission is, he instructs us to look to the drafter's intentions to discern the meaning and better comprehend the scope and purpose of the FLSA. The FLSA was intended to protect workers from being forced to

work abnormally long hours which not only compromised their safety and health, but also took jobs away from other qualified individuals. *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987) (noting the FLSA encouraged work to be dispersed, thereby reducing unemployment, because employers would not opt to hire fewer individuals to work longer). Further, the statutory history of the Act indicates that "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles . . ." is exempt from being paid overtime at a higher rate provided the establishment in which her works sells the services directly to the consumer. 29 U.S.C.S. § 213 (b) (10)(A). Moreover, the CFR also guides us in stating that a bona fide commission rate is *not* where an employee earns a fixed amount each week. 29 C.F.R. § 779.416(c). When technicians are given incentive to "hustle" and work efficiently in order to obtain more opportunity for increased compensation, a commissioned system is present. *Klinedinst v. Swift Inv., Inc.*, 260 F. 3d 1251, 1254-55 (11th Cir. 2001).

First, the Sterling technicians do not work abnormally long hours. While overtime is common, it rarely seems to exceed ten hours a week. Second, the overtime in a repair shop, while not as accident free as banquet waiters, does not seem particularly hazardous. It does not seem likely that technicians would experience much of an increased risk of accident during ten or so extra hours a week. Finally, it is difficult to even imagine that the Sterling team, with some overtime, is taking jobs away from other qualified workers. The technicians at Sterling are highly skilled and in great demand; few go begging. Further, it is hard to imagine how another entire team could be formed to do the extra work in any one shop simply because there does not seem to be enough to go around. Most repair shops have only one or two teams, and the overtime is not enough to keep another team busy. Finally, the skilled technicians at Sterling earn about double the average earnings of the

American worker, some $60,000 to $70,000 per year. The overtime provisions of FLSA hardly seem to be enacted to protect such well-paid, skilled workers.[2]

In *Mechmet*, the hotel banquet employees worked collaboratively to achieve one goal – servicing the customer during a banquet function. *Mechmet*, 825 F.2d at 1175. Although the combined effort was required to deliver the end product, each employee was integral in their own, compartmentalized way, to the successful completion of the banquet. *Id.* Once the banquet was completed, the service charge was billed to the customer, and the banquet employees were in turn allocated their pre-determined share of the amount billed. *Id.* The employees were paid according to their rank, position and contribution to the completion of the task. *Id.* This, the Seventh Circuit said, was a commissioned pay plan. *Id.* at 1178.

Like the team in *Mechmet*, Plaintiffs here worked collaboratively to complete their job and each member's function was integral to the final product. Plaintiffs were forced to rely on the cooperation of the entire team in order to complete their overall task of repairing the vehicle, but they were able to increase their individual booked hours by working efficiently. Increasing their individual booked hours, in turn, increased their weekly compensation. After each task was completed, like the banquet waiters in *Mechmet*, Plaintiffs were paid according to their level of participation, or booked hours, and their rank, or the flat rate of pay. The Seventh Circuit concluded that the banquet employees' team pay plan was commissioned, and Judge Posner's analysis, we

---

[2]It is interesting that these extremely well compensated technicians waited until they left Sterling to complain about the lack of overtime. Lacking a degree on mathematics, even a rough calculation suggests that if they had been compensated by wages at time and one-half they would have earned about two-thirds of what they had earned under the Sterling incentive plan.

believe, strongly suggests that the Sterling pay plan is a commissioned plan as well. While there certainly are differences between the two, we think the central core of the scheme is the same.

*Klinedinst v. Swift Investments* seems to direct us to the same conclusion. There, considering an automobile repair shop that utilized flagged hours to determine compensation, the Eleventh Circuit relied on the Wage and Hour Division's field operation handbook to determine whether a pay plan was commissioned. *Id.* 260 F. 3d at 1255. The court reasoned that the plaintiff's compensation scheme encouraged her to work quickly and paid her at a rate that exceed minimum wage. *Id.* at 1256. The court found that those circumstances, combined with the handbook guidelines (a pay plan that compensates based on flagged hours and a specific rate in a forty-hour pay period), met the requirements of a commissioned system. *Id.*

Like in *Klinedinst*, Plaintiffs created a pool of money by skillful work. That pool was shared by all who contributed to it in large part on the basis on their individual contribution. We believe a system that increases compensation based in large measure on results is the essence of this elusive concept called commission. The Sterling plan has such an essence.

Plaintiffs contend that other case law directs us to conclude that Sterling's plan is not commissioned, but a review of those cases shows them to be largely from the district courts and rather unpersuasive. When we reach the end of this discussion, we still have not found Cinderella, but her slipper seems to more neatly fit the stepsister named commission. Sterling had no obligation, in our judgment, to pay the Plaintiffs overtime. Having granted summary judgment for Defendant Sterling, we deny Plaintiff's motion for summary judgment, leaving them to seek, if they choose, the judgment of a higher, and in all likelihood, wiser court.

## Conclusion

Based on the foregoing, Plaintiffs' motion for summary judgement is denied. Defendant's motion for summary judgement is granted. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** MAY 17 2006